jar

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH OSSANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-4082-JAR |
| | ) |
| JO ANNE B. BARNHART, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM & ORDER

Plaintiff Kenneth Ossana brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of defendant Commissioner of Social Security's denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act) and for supplemental security income under Title XVI of the Act. This Court reverses and remands this case to defendant for further proceedings because defendant erred at step three of the disability evaluation when he failed to identify the applicable Listing and did not explain the finding that plaintiff's physical impairment(s) failed to meet or exceed a Listing. The Court also reverses and remands because at step five, the testimony of the vocational expert was based on a flawed or incomplete hypothetical question.

**I.     Procedural Background**

On November 18, 1999, plaintiff filed his applications for a period of disability and disability

insurance benefits and for supplemental security income; these applications were protectively filed on November 10, 1999. Plaintiff claimed disability since May 1, 1997, due to a pain in his shoulders and right knee, tingling in the left hand, pain in his stomach, constant headaches, liver disease, decubitus ulcers, panic attacks, alcoholism, and cognitive problems due to alcoholism. These applications were denied initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing; plaintiff and his counsel were present and plaintiff testified. The ALJ issued his decision on August 29, 2001 denying all benefits on the basis the plaintiff was not under a "disability" as defined by the Act. On May 18, 2004, after considering additional evidence, the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision is the final decision of defendant.

## II.  Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[1] The Tenth Circuit defines "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[3]

## III.  Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by

---

[1] *See White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[2] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[3] *Id.*

reason of any medically determinable physical or mental impairment . . . ."[4]  The Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[5]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[6] and the ALJ in this case followed the five-step process.  If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[7]  Step one determines whether the claimant is presently engaged in substantial gainful activity.[8]  If he is, disability benefits are denied.[9]  If he is not, the ALJ must proceed to the second step.[10]  Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has

---

[4]*Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

[5]*Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

[6]*See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

[7]*Id*.

[8]*Id*.

[9]*Id*.

[10]*Id*.

3

a medically severe impairment or combination of impairments."[11]  This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[12]  Pursuant to the severity regulations, the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities.[13]  If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.[14]  If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the ALJ proceeds to step three.[15]  The ALJ in this case concluded that plaintiff satisfied the severity requirement based on the following impairments: mild chronic obstructive pulmonary disease; mild left ventricular hypertrophy; a panic disorder; borderline intellectual functioning; a dependent personality disorder; asymptomatic alcohol liver disease; hypertension that is controlled by medication; minimal bilateral carotid stenosis; a history of a subdural hematoma; and chronic headaches.  Thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful

---

[11]*Id*. (quoting *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)).

[12]*Id*. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

[13]*Id.* at 750-51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

[14]*Id*. at 751.

[15]*Id.*

activity."[16]  If the impairment is listed, and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[17]  If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past."[18]  If the claimant is able to perform his previous work, he is not disabled.[19]  The ALJ determined that plaintiff's mental impairments either singularly, or in combination, did not equal or meet the listings 12.05, 12.06 and 12.08.  Specifically, the ALJ found that plaintiff had been diagnosed as having borderline intellectual function, panic attacks and a personality disorder, and that under the "B criteria," plaintiff had a slight degree of limitation in activities of daily living, moderate degree of limitation in social functioning, moderate degree of limitation in concentration, persistence or pace, and no episodes of decompensation.  The ALJ further found that plaintiff's mental impairments did not rise to a level of severity that would meet the "C criteria."  With respect to physical impairments, the ALJ found that neither plaintiff nor his attorney had alleged that any of his impairments, singularly or in combination, met or equaled a Listing; and that the case "cannot be resolved in favor of the claimant at step three upon the medical evidence."

At the third step, the ALJ determined plaintiff's physical residual functional capacity (RFC).[20]  The ALJ found many of plaintiff's subjective complaints not credible, and found that plaintiff could

---

[16]*Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert*, 482 U.S. at 141).

[17]*Id*.

[18]*Id*. (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert*, 482 U.S. at 141).

[19]*Id.*

[20]RFC consists of the activities a claimant is able to perform on a regular and continuing basis despite physical limitations.  20 C.F.R. § 416.945(a)-(c).

5

perform work-related activities, except for: lifting more than twenty pounds maximum and ten pounds repeatedly; standing, sitting or walking more than six hours in eight; climbing ropes, ladders or scaffolds; and bending more than occasionally. The ALJ further found that plaintiff should avoid: concentrated heat, humidity or cold; working at unprotected heights or around hazardous moving machinery; and exposure to dust, fumes and smoke. The ALJ also determined plaintiff's mental RFC, finding that plaintiff was "able to do simple, routine, repetitive work" and that plaintiff "should have only occasional contact with the public."

At the fourth step, the ALJ concluded that plaintiff was unable to perform his past relevant work as a meat cutter, butcher, and bakery worker. The ALJ thus proceeded to the fifth step, which is determining whether the claimant has the RFC to perform other occupations that exist in significant numbers in the local and national economies, considering his age, education, and work background.[21] At this step, the ALJ concluded that plaintiff was not disabled because he could perform a significant number of jobs in the state and national economies, including bench assembler, pressing machine operator and microfilm mounter. This finding was based on the testimony of a vocational expert, whose testimony was based on hypothetical questions describing physical and mental impairments as outlined above.

## IV. Analysis of Plaintiff's Specific Arguments

### *Evaluation of Plaintiff's Subjective Complaints*

Plaintiff contends that the ALJ erred at step three in rejecting his subjective complaints of pain

---

[21] *See id.* (quoting *Bowen v. Yuckert*, 482 U.S. at 142).

6

and panic attacks, which affected the determination of the physical and mental RFC and ultimate determination of disability. The Court disagrees, as the ALJ thoroughly considered the evidence, appropriately weighed the conflicting evidence, and thoroughly explained his bases for finding plaintiff's subjective complaints not credible.

When assessing credibility, the ALJ must consider the three-prong test set out in *Luna v. Bowen*.[22] The ALJ properly determined the first two prongs: plaintiff has an impairment and there is a loose nexus between the alleged symptoms and the impairment.[23] The third prong of the Luna test asks whether the symptoms are in fact disabling, considering all the evidence presented, including medical data, objective indications of the degree of symptoms, and subjective accounts of severity of symptoms by the claimant.[24] In addition to objective medical evidence, at this third step in the *Luna* framework, the ALJ is to consider:

> 1. [t]he individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[25]

---

[22] 834 F.2d 161 (10th Cir. 1987).

[23] *Id.* at 164.

[24] *Id.* at 163.

[25] Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3.

The ALJ may also consider such factors as a claimant's persistent attempts to find relief and willingness to try any treatment prescribed, regular contact with a doctor, and subjective measures of credibility that are peculiarly within the judgment of the ALJ.[26] Moreover, the ALJ must give specific reasons why she rejects a claimant's subjective complaints.[27] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.

Plaintiff contends that the ALJ erred in: (1) finding that plaintiff's complaints were inconsistent with clinical findings, without specifically referencing any such inconsistencies; (2) inexplicably relying on the consultants' opinions, yet ignoring these consultants' opinions in determining plaintiff's limitations and RFC; (3) finding that plaintiff had a history of below average earnings based on evidence of profits, rather than earnings from plaintiff's self employment; (4) relying on gaps in plaintiff's work history that are evidence of plaintiff's disability, not lack of credibility; and (5) failing to consider the evidence of a third party witness, plaintiff's mother, about his daily activities, social interaction, pain and panic attacks. The Court addresses these contentions in turn.

Contrary to plaintiff's assertions, the ALJ identified a host of clinical findings and other evidence in the record that was inconsistent with plaintiff's subjective complaints. Plaintiff complained that he could not work because of back and leg pain, as well as constant headaches. Yet, an emergency room record in 1997 reported that plaintiff lacerated his chin while moving a piece of furniture; medical

---

[26]*Luna*, 834 F.2d at 165-66; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

[27]*White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).

8

records in 1998 reported that plaintiff fractured his left clavicle from falling off his bike while intoxicated; and a medical record in 2000 reported that in 1999 plaintiff had hurt his left shoulder when he fell off a horse in a rodeo. These reports over a period of a number of months, of plaintiff riding a horse, moving furniture and riding a bike, belied plaintiff's subjective complaints of disabling pain. Additionally, a May 5, 2000 consultative physical exam indicated that plaintiff had limited range of motion in the left shoulder, but normal knee x-rays and range of motion in his knees. Moreover, the ALJ considered facts pertinent to other *Luna* factors in discounting plaintiff's complaints of pain, including: (1) plaintiff admitted that physical therapy had helped relieve his back pain in the past; (2) plaintiff took no prescription pain medication, and relied only on over the counter medications; (3) plaintiff had a medical card, and thus the means to seek treatment for his pain.[28]

The ALJ also properly considered plaintiff's reported activities of daily living. Although plaintiff claimed that he was unable to lift two gallons of milk without experiencing pain and was unable to sit longer than twenty minutes, the medical records, failure to seek further treatment, and reported activities of daily living, belied plaintiff's subjective complaints of pain.[29] Plaintiff reportedly was able clean his apartment, cook, drive, watch television, read the paper, go to the library five days per week, visit with the librarian, and visit friends. Plaintiff managed his own finances and did his own shopping. Some or all of these activities would likely require plaintiff to lift the equivalent of two gallons of milk, or sit for

---

[28] *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (explaining that impairments that can be controlled by medication, treatment, or surgery are not disabling); *McKenney v.Apfel*, 38 F. Supp. 2d 1249, 1256 (D. Kan. 1999) (upholding the ALJ's decision that the claimant's back pain was not disabling where he failed to receive ongoing medical treatment and failed to take potent pain medications); *Noble v. Callahan*, 978 F. Supp. 980, 986 (D. Kan. 1997) (finding use of non-prescription pain medication is inconsistent with a disabling impairment).

[29] *See Noble*, 978 F. Supp. at 986-87 (citing *Johnson v. Chater,* 87 F.3d 1015, 1018 (8th Cir. 1996)) (explaining that the ALJ is not required to believe all of the claimant's assertions concerning his or her daily activities).

longer than twenty minutes.

The ALJ also properly considered the clinical findings and medical records, as well as other *Luna* factors in discounting plaintiff's complaints of disabling panic attacks. The ALJ considered evidence of plaintiff's acknowledgment that Paxil had decreased the frequency of his panic attacks, but that plaintiff was not taking the medication nor seeking ongoing treatment, despite having a medical card. Frequency of medical contacts is a factor for the ALJ to consider when determining plaintiff's credibility.[30] In January 2000, a consultant psychologist examined plaintiff and found that he had no impairment in his activities of daily living, nor any impairment in his ability to establish and maintain adequate relationships with coworkers and supervisors or perform simple tasks in a timely fashion, concentrate at a persistent pace, or maintain an adequate work schedule with average performance demands. In July 2000, a different consultant psychologist examined plaintiff and characterized him as malingering, as exaggerating his reported symptoms, as being unable to identify any specific limitations associated with his panic attacks, and as presenting significant discrepancies in the information and complaints he provided compared to his January 2000 exam.[31] The consulting psychologist who examined plaintiff in July 2000 further found that plaintiff could interact with coworkers, and had sufficient memory and concentration to perform simple work-related decisions and tasks.

---

[30] *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

[31] *See Buck v. Barnhart*, 238 F. Supp. 2d 1255, 1261-62 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)) ("Reviewing courts recognize that some claimants exaggerate symptoms for the purposes of obtaining government benefits, and thus deference to the fact-finder's assessment of credibility is the general rule.").

Moreover, the ALJ addressed and explained why he did not rely on contrary medical findings and opinions. The ALJ adequately explained that he had discounted Dr. Edward's 1999 opinion letter that plaintiff was unemployable because he wrote a progress note in March 2000, stating that plaintiff did not have a disability that warranted unemployment. The ALJ explained that he discounted Dr. Galichia's June 2001 opinion because it was conclusory and did not reference any specific clinical findings supportive of his opinion.

In discounting plaintiff's complaints of disabling panic attacks, the ALJ also properly considered plaintiff's reported activities of daily living. The ALJ found that among his daily activities, plaintiff reported visiting friends, and visiting with the librarian during his frequent visits to the library. Plaintiff enjoyed interacting with other people and displayed no sign of social anxiety. The ALJ also relied on plaintiff's presentation at the hearing, noting that plaintiff presented himself "neatly groomed."[32] The ALJ also properly relied on the inconsistency between reported daily activities and subjective complaints.[33]

Plaintiff complains that the ALJ improperly relied on his earnings, because his earnings were based on reported profits of self employment, not earned income from another source. Work history is

---

[32] *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").

[33] *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988) (finding daily activities may be considered, along with other evidence, in determining whether a person is entitled to disability benefits); *Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir. 1986) (explaining inconsistent evidence or contradictory statements constitute a legally sufficient reason for disbelieving the claimant's subjective complaints); *Mosteller v. Bowen*, 702 F. Supp. 1534, 1538 (D. Kan. 1988) (stating that when the claimant's activities were inconsistent with his claim of disabling pain, such inconsistencies may be considered by the Commissioner in making her credibility determination).

one factor that can be important in a credibility analysis. The ALJ may use the fact that plaintiff had periods of unemployment before his alleged onset date as one of the factors bearing on plaintiff's credibility.[34] The ALJ may consider plaintiff's minimal work history and his lack of side effects as factors in his credibility determination.[35] While evidence of employment during a period of alleged disability is highly probative of a claimant's ability to work;[36] evidence of failure to work may be highly probative of a lack of motivation to work, a factor pertinent in determining the credibility of subjective complaints.[37] To the extent the ALJ improperly evaluated plaintiff's work or earnings history as evidencing a lack of motivation to work, such evaluation is inapposite because the ALJ's credibility determination is supported by other, substantial evidence.

Plaintiff also contends that the ALJ failed to mention, and thus apparently did not consider, information from a third party, plaintiff's mother. The Court agrees that the ALJ did not refer to the 1997 activities questionnaire completed by plaintiff's mother. But, the Court finds that most of the information in that questionnaire supports the ALJ's credibility determination. For example, Plaintiff's mother reported that plaintiff had told her he was lonely, spent a lot of time alone, had trouble sleeping, had anxiety attacks and back and arthritic pain. Despite these limitations, plaintiff's mother contended that plaintiff was "mentally capable," had good retention, had good grooming, did his own cooking, used a sweeper, rode his bike, walked and read. But, plaintiff's mother also reported that she had little

---

[34]*Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

[35]*See id.* (citing Soc. Sec. Reg. 88-13); Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3.

[36]*See Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996).

[37]*See Bean*, 77 F.3d at 1213.

or no independent knowledge of plaintiff's social activities and interactions, or his ability to follow directions or complete a task. In short, even if the ALJ did not consider or rely on this information from plaintiff's mother, the ALJ's credibility determination is supported by other substantial evidence.

### *Failure to Identify Listing(s) or Explain Findings*

At step three, the ALJ identified the listings of mental impairments that plaintiff did not meet or exceed; but the ALJ neither identified the listings of *physical* impairments by number, nor explained his finding that plaintiff did not meet or exceed such listings. This is reversible error. In *Clifton v. Chater*,[38] the Tenth Circuit held that it was a reversible error for the ALJ to not "discuss the evidence or his reasons for determining that [plaintiff] was not disabled at step three, or even identify the relevant Listing or Listings."[39] The ALJ simply cannot rely on a summary conclusion that the plaintiff's impairments did not meet or equal any Listed Impairment, because "[s]uch a bare conclusion is beyond meaningful judicial review."[40] On remand, the ALJ must identify the listing(s) and discuss the evidence or reasons for determining that plaintiff is not disabled at step three.

### *Hypothetical Question Concerning Mental Impairment*

At step five, the ALJ posed a series of hypothetical questions to the vocational expert to elicit an opinion on the availability of work in the national or local economy for people with particular impairments. Here, while the ALJ's hypothetical question included, based on substantial evidence, a functional description of plaintiff's physical impairments, the hypothetical question did not provide such

---

[38] 79 F.3d 1007 (10th Cir. 1996).

[39] *Id.* at 1109.

[40] *Id.*

13

a functional description of plaintiff's mental impairments. Rather, the hypothetical question posited:

> [A] hypothetical claimant . . . 46 to 50 years of age, with a high school equivalent education. . . . [N]o past relevant work. . . . Impairments include mild COPD. . . . panic disorder, BIF, dependent personality disorder. . . . [C]ould lift up to 20 pounds only occasionally, could lift 10 pounds more frequently. Standing and walking and sitting, up to six of eight hours with usual breaks. . . . [Occasional] bending and stooping . . . . No climbing of ropes, ladders or scaffolding. He needs to avoid unprotected heights. Needs to avoid hazardous machinery. Needs to avoid concentrated exposure to hot, humid and cold. . . . Needs to avoid dust, smoke and fumes, dust, gases, noxious odors. . . . Mentally, we'll limit to simple, routine, repetitive-type work.. And . . . occasional contact with the public.

The vocational expert opined that an individual with those described limitations could work bench assembly, light machine pressing operator and microfilm camera mounter, all light unskilled jobs and a variety of other sedentary and unskilled work. The ALJ further asked the effect if the hypothetical claimant had as "one of the DDS examiners at 5f, posited, often deficiencies in concentration, persistence or pace." The vocational expert opined that such an individual could not maintain employment. The ALJ ignored this testimony, apparently on the basis that he had not found that plaintiff "often" had such deficiencies, but had merely found that plaintiff had a "moderate" degree of limitations in concentration, persistence and pace.

Plaintiff contends that defendant's decision should be reversed and benefits awarded immediately, because the vocational expert testified that someone who "often" has deficiencies in concentration, persistence and pace cannot maintain employment. A vocational expert's testimony can provide a proper basis for an ALJ's determination, where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert.[41] The ALJ, however, is required to accept and

---

[41]*Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

include in the hypothetical question only those limitations supported by the record.[42]  Here, the record is inconclusive, at best.  The ALJ's RFC determination was that plaintiff was "moderately limited" in "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" and "moderately limited" in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  On the Psychiatric Review Technique Forms (PRTF), the ALJ characterized the limitation as plaintiff  "often" suffers from "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)."

This Court is not willing to assume, as defendant urges, that "often" on the PRTF equates with "moderate" on the RFC form, although both represent the middle of the respective rating scales on those two forms.[43]  Nor is this Court willing to assume, as plaintiff urges, that the "often" rating on the PRTF is supported by substantial evidence warranting its inclusion in the hypothetical question.  The ALJ's decision refers to only one medical finding concerning concentration, persistence or pace, and nothing in the ALJ's decision or in the record explains or serves to distinguish, a qualitative finding of a moderate limitation, from a quantitative finding that plaintiff often experiences such deficiencies.

---

[42]*Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999).

[43]*See Nelson v. Comm'r of Soc. Sec. Admin.*, 252 F. Supp. 2d 1148, 1164-65 (D. Kan. 2003) (citing *Zeff v. Shalala,* 45 F.3d 441 (table), No. 94-5076, 1994 WL 721464, at *1 (10th Cir. Dec. 29, 1994), which found that a hypothetical question that included that the claimant "would often have deficiencies of concentration" was not sufficiently precise to constitute substantial evidence; the ALJ should have solicited additional testimony from the vocational expert as to whether and how the concentration deficiencies would affect plaintiff's ability to perform the jobs identified by the vocational expert, as some level of concentration was necessary to perform all the jobs identified by the vocational expert).

**IV.     Conclusion**

For these reasons, the Court will not reverse and award benefits immediately. Instead, the Court will reverse and remand for determination and/or clarification of the functional mental limitations of plaintiff, and for testimony from a vocational expert based on hypothetical questions including all functional limitations supported by substantial evidence, whether those limitations be expressed qualitatively (e.g. moderate) and/or quantitatively (e.g. often). On remand, the ALJ should correct other errors in this record: failing to identify the Listing of physical impairments that the plaintiff fails to meet or exceed; and failing to identify and discuss the evidence supporting the finding that plaintiff fails to meet or exceed the specific physical impairment listings. Although plaintiff also contends that the ALJ erred in evaluating plaintiff's subjective complaints, the Court finds that the ALJ's analysis is supported by substantial evidence.

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

> Upon receiving the Court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of plaintiff's impairments in accordance with the statutes and regulations. The ALJ should reconsider whether plaintiff's physical impairments meet or equal a Listed Impairment, explaining which Listing(s) he considers and detailing the evidence he relies on when making the determination. The ALJ will engage in a function-by-function analysis of Plaintiff's mental residual functional capacity, discussing the evidence relied upon in such analysis. The ALJ will obtain testimony from a vocational expert based on hypothetical question(s) that fully incorporate all functional limitations supported by substantial evidence.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 12th day of May, 2005, at Topeka, Kansas.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge